**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **HAYLEY MARTORANA,** individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) |
| **PROGRESSIVE DIRECT INSURANCE COMPANY,** | ) ) ) |
| **Defendant.** | ) ) ) |

Case No. 22-cv-10613-DJC

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                                    **March 10, 2023**

## I.    Introduction

Plaintiff Hayley Martorana ("Martorana") has filed this putative class action lawsuit against Defendant Progressive Direct Insurance Company ("Progressive") alleging violations of Mass. Gen. L. c. 93A (Count I), breach of contract (Count II), and breach of the implied covenant of good faith and fair dealing (Count III) and seeking declaratory relief (Count IV). D. 10. Progressive has moved for dismissal only as to Counts I and IV. D. 24. For the reasons stated below, the Court ALLOWS Progressive's partial motion to dismiss as to Count I, only to the extent Count I relies upon Mass. Gen. L. c. 176D, § 3(9)(c) and (g) to prove an unfair or deceptive act, and as to Count IV, and otherwise DENIES the motion, D. 24.

## II.     Standard of Review

A defendant may move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To withstand a Rule 12(b)(6) challenge, the Court must determine if the complaint "plausibly narrate[s] a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citation omitted).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id. (citation omitted).  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id. (citation omitted).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

## III.     Factual Background

The following facts are drawn from Martorana's amended complaint, D. 10, and are accepted as true for the purpose of resolving Progressive's partial motion to dismiss.

Martorana was involved in an automobile collision on June 12, 2020 and sustained damage to her vehicle.  Id. ¶¶ 12, 17.  She had first-party comprehensive and collision insurance coverage underwritten by Progressive, as a covered household family member under a policy purchased by Craig Martorana.  Id. ¶ 12; D. 10-2 at 2.  Martorana made a property damage claim under the policy to Progressive.  D. 10 ¶ 18.  Pursuant to the policy, Progressive agreed to cover "any direct and accidental damage to your auto caused by a collision" to a maximum amount of "either the

actual cash value ("ACV") of the auto or the cost to physically repair the auto, whichever is less."
D. 10-1 at 20.  Additionally, the policy provides that "[s]ometimes there may be a disagreement
as to the amount of money we owe for losses or damage to an auto.  If so, Massachusetts law
provides for a method of settling the disagreement.  Either you or we can, within 60 days after you
file your proof of loss, demand in writing that appraisers be selected.  The appraisers must then
follow a procedure set by law to establish the amount of damage.  Their decision will be binding
on you and us."  Id. at 31.  Furthermore, the policy prohibits the insured from suing Progressive
"unless there is full compliance with all the terms of this policy."  Id. at 33.  Progressive determined
the vehicle was a total loss and offered her the ACV of same.  D.10 ¶ 19.

To calculate its valuations and claim payments, Progressive employs a "total loss
settlement process," which involves obtaining a "Vehicle Valuation Report" from Mitchell
International, Inc. ("Mitchell").  Id. ¶ 20.  The reports contain values for comparable vehicles
recently sold or currently for sale in the claimant's geographic area and calculates a valuation of
the claimant's vehicle based upon the advertisements for the comparable vehicles.  Id. ¶ 21.  The
reports then adjust the comparable vehicles' advertised prices to account for differences in
equipment, mileage, and vehicle configuration.  Id.  Additionally, the reports make a further
adjustment to the claimant's vehicle called a "Projected Sold Adjustment" ("PSA"), which is
described as "an adjustment to reflect consumer purchasing behavior (negotiating a different price
than the list price)."  D. 10-2 at 12; D. 10 ¶ 22.

Martorana alleges that the PSA does not reflect market realities because "prices are priced
to market to reflect the intense competition in the context of Internet pricing and comparison
shopping."  D. 10 ¶ 24.  During Martorana's purported class period, she alleges that car dealerships
use sophisticated pricing software—"which provides the advertised prices of all competitors; the

average 'turn' of a given year, make and model; the amount for which vehicles have sold during a given time-period; etc.—and now appraise vehicles before acquiring them to price them to market and do not negotiate from that price." Id. ¶ 26. Given this alleged reality, "a negotiated discount off the cash price is highly atypical and is not proper to include in determining ACV." Id. ¶ 28. Martorana alleges that Progressive deviates from appraisal standards because the ACV "thumb[s] the scales . . . against the insured." Id. ¶ 29.

Until July 2021, Progressive excluded from its PSA calculations all transactions in which the list price of a vehicle equaled the sold price. Id. ¶ 31. After July 2021, Progressive still excludes some transactions in which the list price of a vehicle equals the sold price. Id. ¶ 32. Progressive excluded and continues to exclude transactions in which the sold price is greater than the list price. Id. ¶ 33. Progressive's PSA calculations also does not take into account several considerations that could affect a list price, including discounts for consumers who are financing the vehicle and providing a trade-in, discounts for employees, and whether the vehicle was purchased with cash. Id. ¶¶ 41, 44, 45. Mitchell's primary competitor, CCC Intelligent Solutions, Inc. ("CCC"), does not apply PSAs in this manner; rather, it uses list prices. Id. ¶ 47. Progressive does not apply this PSA when valuing total losses in California or Washington. Id. ¶ 48.

On July 7, 2020, Progressive provided Mitchell's Vehicle Valuation Report for Martorana's vehicle. Id. ¶ 20. In the report, PSAs in the amounts of -$749.00, -$629.00, -$664.00, -$643.00, -$679.00, -$679.00, -$742.00, -$639.00, -$635.00, and -$687.00, respectively, were applied to ten of the eleven comparable vehicles. D. 10-2 at 6–11. If not for these PSAs, Martorana's ACV payment would have been $613.27 higher. D. 10 ¶ 50.

In a letter sent on April 26, 2022, and received by Progressive on May 2, 2022, Martorana

notified Progressive of her claims pursuant to Mass. Gen. L. c. 176D and Mass. Gen. L. c. 93A,

§§ 2, 9.  Id. ¶ 77.

## IV.  Procedural History

Martorana instituted this action on April 25, 2022, D. 1, and later amended her complaint,

D. 10.  Progressive moves to dismiss only as to Counts I and IV.  D. 24.  The Court heard the

parties on the pending motion and took the matter under advisement.[1]  D. 51.

## V.  Discussion

### A.  Claim Under Mass. Gen. L. c. 93A (Count I)

Progressive seeks dismissal of Count I of Martorana's amended complaint, alleging

violations of Mass. Gen. L. c. 93A.  D. 24 at 1-2.  Chapter 93A prohibits "unfair or deceptive acts

or practices in the conduct of any trade or commerce."  Mass. Gen. L. c. 93A, § 2(a).  To sustain

such a claim, the plaintiff must prove (1) the defendant committed an unfair or deceptive act or

practice; (2) the unfair or deceptive act or practice occurred in the conduct of any trade or

commerce; (3) the plaintiff was injured; and (4) the defendant's unfair or deceptive act or conduct

was the cause of the injury.  Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161 (2018).

While Chapter 93A does not define what constitutes an "unfair or deceptive" practice,

courts have defined "an act or practice [as] unfair if it falls 'within at least the penumbra of some

common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical,

oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'"  Walsh v. TelTech

Sys., 821 F.3d 155, 160 (1st Cir. 2016) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366

---

[1] In addition to considering the parties' papers and oral arguments, the Court considered
the supplemental authorities filed by Martorana.  D. 39; D. 44; D. 45; D. 52; D. 53.

Mass. 593, 596 (1975)).  "[A]n act or practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'"  Id. (second alteration in original) (quoting Aspinall v. Philip Morris Cos., Inc., 442 Mass. 381, 394 (2004)).  In the insurance context, "[a] violation of [C]hapter 176D may form the predicate for a cause of action under section 9 of [C]hapter 93A."  Cont'l Ins. Co. v. Bahnan, 216 F.3d 150, 156 (1st Cir. 2000) (citing Transamerica Ins. Grp. v. Turner Constr. Co., 33 Mass. App. Ct. 446, 452 (1992)).  Ultimately, the caselaw "do[es] not diverge from the Chapter 93A principle that something more [than negligence] and rising to the level of extreme or egregious conduct is required for a successful Chapter 93A claim."  Anoush Cab, Inc. v. Uber Techs., Inc., 8 F.4th 1, 18 (1st Cir. 2021) (citation and internal quotation marks omitted).

Turning to the case at bar, there is no colorable dispute that the latter three elements of a 93A claim are plausibly alleged here.  The application of the PSA occurred in the conduct of trade or commerce, Martorana was injured because her ACV payment would have been $613.27 higher,[2] and the application of the PSA caused her injury.  D. 10 ¶¶ 20, 22, 49–50.  The only remaining question regarding the 93A claim, therefore, is whether Martorana plausibly alleged an unfair or deceptive act or practice—namely, the application of the PSA.  She relies upon statutory— specifically, subsections 3(9)(a), (c), and (g) of Chapter 176D—and non-statutory concepts of unfairness and deception to allege that the PSA is unfair and/or deceptive.  D. 10 ¶¶ 65–67; D. 34 at 5–10.

---

[2]  To the extent Progressive argued during oral argument and argues in its written submissions that Martorana did not allege an injury or damages in her amended complaint, D. 25 at 14–15; D. 43 at 2, it is incorrect, D. 10 ¶¶ 49–50.

1.    *Mass. Gen. L. c. 176D, § 3(9)(a), (c), (g)*

Chapter 176D catalogues fourteen insurance claim settlement practices that are statutorily unfair, Mass. Gen. L. c. 176D, § 3(9)(a)–(n), a violation of which may be the basis for a Chapter 93A claim, Cont'l Ins. Co., 216 F.3d at 156 (citing Transamerica Ins. Grp., 33 Mass. App. Ct. at 452).   In alleging her 93A claim, Martorana invokes subsection 3(9)(a) for "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue," subsection 3(9)(c) for "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," and subsection 3(9)(g) for "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds."[3]  Mass. Gen. L. c. 176D, § 3(9)(a), (c), (g); D. 10 ¶ 66.  Progressive contends Martorana has failed to allege facts that would constitute a violation of these subsections.[4]  D. 25 at 9–12; D. 43 at 3–4.

---

[3] Progressive argues for dismissal of Count I because, in its view, Martorana "simply parrot[ed] the language of the statute" and its subsections.  D. 25 at 7.  That is incorrect.  It is true that Martorana quoted the statutory provisions, but she accompanied them with specific allegations regarding the PSA, its calculation and imposition on her and purported class members, and Progressive's possession of data that contradicts the PSA.  D. 10 ¶¶ 17–50.

[4] Progressive suggests dismissal is also appropriate because the same facts undergird Martorana's Chapter 93A and breach of contract claims, D. 25 at 7–8, and "[a] mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, . . . unless it rises to the level of commercial extortion or a similar degree of culpable conduct," Com. Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000) (citations and internal quotation marks omitted).  As discussed below, however, Martorana has alleged misconduct, such as misrepresenting pertinent facts regarding coverage, that could give rise to liability independent of her separate breach of contract claim.  See Ora Catering, Inc. v. Northland Ins. Co., 57 F. Supp. 3d 102, 109 (D. Mass. 2014) (explaining that the "plaintiff alleges misconduct by defendant that might support activity, independent of a claim under the policy, [that is] violative of G.L. c. 176D. . . .  For example, plaintiff contends that, *inter alia*, defendant misrepresented policy provisions in its denial letter.  Such misconduct, if true, would enable plaintiff to bring suit against defendant for actions independent of any breach of contract claim" (alteration in original) (internal citations and quotation marks omitted)).

a)    Mass. Gen. L. c. 176D, § 3(9)(a)[5]

Chapter 176D decrees "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" statutorily unfair.  Mass. Gen. L. c. 176D, § 3(9)(a).  Progressive argues that Martorana "fails to identify what facts or Policy provisions were misrepresented, how those misrepresentations related to the coverages at issue, or otherwise allege any details about the purported misrepresentations."  D. 25 at 9.

To establish a violation of Mass. Gen. L. c. 176D, § 3(9)(a), plaintiffs must allege "a misrepresentation of a pertinent fact or policy provision."  McKinnon v. Unum Grp., 516 F. Supp. 3d 49, 58 (D. Mass. 2021).  A misrepresentation means "a false or misleading assertion of fact." Aquino v. Pacesetter Adjustment Co., 416 F. Supp. 2d 181, 194 (D. Mass. 2005) (citations omitted).  The First Circuit has also suggested that "silence in the face of a duty to speak can be as harmful to an insured's interests as outright prevarications," so "good faith requires that an insurer keep its insured informed of facts material to his exposure, including information relating to coverage and settlement negotiations."  Peckham v. Cont'l Cas. Ins. Co., 895 F.2d 830, 840 (1st Cir. 1990) (citing cases).  Sessions of this Court and Massachusetts state courts do not recognize subsection (a) violations unless the defendant "deliberately misrepresented" the pertinent fact or

---

[5] There appeared to be some confusion among the parties, both at oral argument and in their written submissions, as to whether the Martorana continues to rely on subsection 3(9)(a) of c. 176D as a basis to conclude Progressive's actions constitute a Chapter 93A violation.  In its reply, Progressive argues that Martorana "abandon[ed] any reliance on subsection (a) and concedes—as she must—that Progressive Direct did not make any misrepresentations to her, at the point of sale or otherwise, with respect to what the Policy covered."  D. 43 at 3.  Martorana conceded that she did "not allege misrepresentations in the policy application process," but appeared to continue to rely on the statutory language of subsection (a) in her response to the motion to dismiss, though mistakenly labeled her citation to subsection (c).  D. 34 at 9, 11 n.7.  In an abundance of caution, the Court will address this claim.

policy provision "or otherwise acted in bad faith or with an improper motive," even where the plaintiff has alleged technical violations of subsection (a).  Aquino, 416 F. Supp. 2d at 192 (citing cases).

Here, Martorana has pled sufficient facts to survive a motion to dismiss.  She alleges that Progressive represents to its insureds that there are differences between listed and sold prices of used vehicles, which results in a lower total ACV, despite allegedly possessing data demonstrating that representation to be false.  D. 10 ¶¶ 1–8, 20–48; D. 10-1 at 20; D. 10-2 at 12.  Martorana alleges that car dealerships now "price [vehicles] to market and do not negotiate from that price," so by applying the PSA, Progressive knowingly "thumb[s] the scales . .  against the insured."  D. 10 ¶¶ 26, 29.  At oral argument, Progressive averred that it did not misrepresent the coverage because it at no point told Martorana that she was not entitled to the ACV of her vehicle and that Martorana's claim is simply an evaluation dispute.  These arguments miss the mark because subsection (a) does not solely protect against misrepresentations of the coverage, but also the "pertinent facts" related to it.  Mass. Gen. L. c. 176D, § 3(9)(a); McKinnon, 516 F. Supp. 3d at 58 (acknowledging that "3[(9)](a) violations must be based on a misrepresentation of a pertinent fact or policy provision"). A reasonable insured could find the application of an allegedly arbitrary and demonstrably false valuation deduction to be a "pertinent fact" to their insurance coverage. Ultimately, these facts, which the Court must accept as true at this stage in the proceedings, constitute "a false or misleading assertion of fact."  See Dattilo v. Arbella Mut. Ins. Co., No. 024510E, 2007 WL 1417870, at *3 (Mass. Super. Ct. May 3, 2007), aff'd sub nom. Gore v. Arbella Mut. Ins. Co., 77 Mass. App. Ct. 518 (2010) (concluding that insurer violated Mass. Gen. L. c. 176D, § 3(9)(a) when it misinformed the insured that "a formal demand has not been received," despite a settlement offer having been made); Panzarella v. Travelers Ins. Co., No. 96012, 2002

WL 1290207, at *16–17 (Mass. Super. Ct. Apr. 26, 2002) (concluding, after a bench trial, that insurer technically violated Mass. Gen. L. c. 176D, § 3(9)(a) when it "failed to disclose . . . an umbrella policy that provided up to $ 5 million excess liability coverage," but dismissing the claim nevertheless where the insurer did not act in bad faith); Riley v. Com. Ins. Agency, 1999 Mass. App. Div. 243, 247 (1999) (affirming trial court's conclusion that insurer violated Mass. Gen. L. c. 176D, § 3(9)(a), where it misrepresented that coverage included loss of business coverage or alternate living coverage).

Furthermore, as Progressive's own data allegedly shows these representations that there are differences between listed and sold prices of used vehicles are false, Martorana has sufficiently alleged these misrepresentations are "deliberate" and made "in bad faith" and "with improper motive." See U.S. ex rel. Metric Elec., Inc. v. Enviroserve, Inc., 301 F. Supp. 2d 56, 71 (D. Mass. 2003) (concluding insurance company's statements were not misrepresentations actionable under Chapter 176D because there was "no indication that the [insurance company] did not believe them to be true at the time" and were not a "deliberate misrepresentation of underlying facts"); Shamban v. Worcester Ins. Co., No. 96-01479, 1997 Mass. Super. LEXIS 493, *17–18 (Mass. Super. Ct. Apr. 22, 1997) (concluding that insurance company's incorrect interpretations of the insurance policy were not actionable under Chapter 176D because "there [was] no evidence of any bad faith or ulterior motives").

Accordingly, Martorana has sufficiently pled a violation of Chapter 93A based upon the predicate of a violation of Chapter 176D, § 3(9)(a).

b)    Mass. Gen. L. c. 176D, § 3(9)(c)

Pursuant to Chapter 176D, "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" is an unfair insurance claim

settlement practice.  Mass. Gen. L. c. 176D, § 3(9)(c).  Martorana relies upon this provision for her 93A claim, explaining that "if it is true that Progressive is ignoring the very data upon which the PSA is purportedly calculated, ignoring well established used market realities, making every assumption to its own benefit and to the insureds' detriment (and never making assumptions that would benefit insureds), violating established appraisal standards and principles, and so forth, a factfinder could reasonably conclude Progressive is not, for example, implementing 'reasonable standards' for claim investigation and adjustment."  D. 34 at 8.  Progressive argues that subsection (c) only regulates an insurer's investigation of claims, not a determination of a claim's monetary value.  D. 43 at 3–4.

The Court concludes that Progressive has the better of the arguments.  Martorana suggested at the motion hearing that subsection (c) also encompasses the evaluation of a claim's monetary value, because when an insured is investigating its liability, it is also investigating the amount of loss.  Martorana has proffered no caselaw that stands for that proposition.  To the contrary, a review of the caselaw in this area demonstrates that, when confronted with a subsection (c) claim, courts have only analyzed the steps an insurer took to determine whether it was liable.  See, e.g., Horace Mann Ins. Co. v. Monteiro, No. 99-3058, 2001 WL 1334210, at *3 (Mass. Super. Ct. Aug. 7, 2001) (dismissing subsection (c) claim against insurer because "no reasonable jury could find that [the insurer] . . . failed to adopt reasonable standards for the investigation of [the vehicular accident] claim" where it "t[ook] sworn statements from [the operators and owner of the vehicles] and employ[ed] an accident reconstruction expert"); Taveras v. Rodriquez, 2000 Mass. App. Div. 39, 41, 2000 WL 174901, at * (2000) (dismissing appeal based upon subsection (c) claim arising out of a vehicular accident against insurer because it "reviewed the police accident report, [the

operators' report and account]; examined, photographed and appraised the damage to both vehicles; and consulted with its appraisers, claims representatives and legal counsel").

This understanding of subsection (c) also comports with Mass. Gen. L. c. 176D, § 3(9)'s broader statutory framework.  Other subsections relate specifically to settlement offers.  See, e.g., Mass. Gen. L. c. 176D, § 3(9)(f) (cataloging as statutorily unfair an insurer's "fail[ure] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"); id. § 3(9)(h) (cataloging as statutorily unfair an insurer's "attempt[] to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application"); id. § 3(9)(i) (cataloging as statutorily unfair an insurer's "attempt[] to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured").  These statutory provisions, therefore, further suggest that subsection (c) relates only to claims of investigation, not settlement offers and the evaluation of same.

For all of these reasons, Martorana has not sufficiently pled a violation of Mass. Gen. L. c. 176D, § 3(9)(c).

c)   Mass. Gen. L. c. 176D, § 3(9)(g)

Subsection (g) provides that it is an unfair insurance settlement practice to "[c]ompel[] insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Mass. Gen. L. c. 176D, § 3(9)(g).  The protections of this provision apply only where liability is "reasonably clear."  Guity v. Com. Ins. Co., 36 Mass. App. Ct. 339, 343 (1994) (citing Bos. Symphony Orchestra v. Com. Union Ins. Co., 406 Mass. 7, 13–14 (1989)).  The intent behind this provision is "to penalize 'low balling.'"  Bohn v. Vt. Mut. Ins., Co., 922 F. Supp. 138, 148 (D.

12

Mass. 2013) (quoting R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 77 (2001)).

Progressive presses two arguments as to why Martorana has failed to state a claim under this provision.   First, it argues that Martorana has not alleged a single instance where a Massachusetts insured brought a claim against Progressive under the theory that she advances here. D. 25 at 12; D. 43 at 3.  However, Progressive cites no caselaw, and the Court is aware of none, that requires plaintiffs proceeding under subsection (g) to allege other instances of litigation brought against the insurer under the same theories of liability.  And to the extent such is required, not only did Martorana file notices of supplemental authority—some of which Progressive itself cites—including Orders from cases with similar claims against Progressive in other jurisdictions, see, e.g., Volino v. Progressive Cas. Ins. Co., No. 21 Civ. 6243 (LGS), 2022 WL 5242894, at *1 (S.D.N.Y. Oct. 6, 2022) (alleging that Progressive "used valuation reports that applied an improper and deceptive adjustment . . . [the] PSA . . . to reduce the resulting actual cash value payable to Plaintiffs under [Progressive's] automobile insurance policies"); Brown v. Progressive Mountain Ins. Co., No. 3:21-cv-00175-TCB, 2022 WL 18777475, at *2 (N.D. Ga. Aug. 15. 2022) (alleging that "Progressive relied on a valuation report prepared by Mitchell . . . to determine market values of vehicles that Progressive insures" and that "Mitchell also made an adjustment to each vehicle's value . . . call[ed] a . . .  PSA, [which] is intended to reflect consumer purchasing behavior, namely negotiating a lower price than the listed price"), but Progressive itself also proffered another similar case against it from another jurisdiction, see Grady v. Progressive Direct Ins. Co., No. 22-cv-00866 (NEB/TNL), 2022 WL 18494898, at *1 (D. Minn. Nov. 30, 2022) (alleging that "used-car markets no longer [regularly negotiate with buyers], so Progressive Direct's PSAs improperly reduced her insurance award").

Second, Progressive contends that Martorana was not compelled to institute litigation because she never notified it of her discontent with the settlement amount and did not pursue the contractual option to challenge the settlement amount through the procedures set forth by the Massachusetts Division of Insurance. D. 25 at 12. Again, Progressive offers no caselaw support for its position that a would-be plaintiff, who has received a settlement offer, is obligated to pursue alternative resolutions first, before instituting litigation.

Martorana's claim pursuant to subsection (g), nevertheless, fails because the provision's "legislative purpose [is] to penalize the practice of 'low balling'" and only applies to settlement offers that are "much less than a case is worth" or are "markedly inadequate." Guity, 36 Mass. App. Ct. at 343. Offers protected by subsection (g) cannot be "merely less" than what is recovered, they must be "substantially so." Forcucci v. U.S. Fid. & Guar. Co., 817 F. Supp. 195, 202 (D. Mass. 1992). Here, Martorana alleges that her ACV was $613.27 less than what it would have been had the PSA not been applied. D. 10 ¶ 50. This difference cannot be said to be "substantial." See, e.g., Bohn, 922 F. Supp. 2d at 148–49 (concluding offer of $30,000 was not substantially less than the $61,000 offer of judgment plaintiff later accepted); Forcucci, 817 F. Supp. at 202 (concluding offer of $25,000 was not substantially less than an arbitrator's award of $55,000); R.W. Granger & Sons, Inc., 435 Mass. at 76–77 (concluding offer of $230,000 was substantially less, where the "underlying jury verdict [was] of more than $203,000, interest in the amount of at least $69,901.86, as well as reasonably expected attorney's fees").

Accordingly, Martorana has not plausibly alleged a violation of Mass. Gen. L. c. 176D, § 3(9)(g) for the basis of its c. 93A claim.

2. *Unfair and/or Deceptive Acts Alleged Independent of any Violation of Chapter 176D*

Independent of any statutory violation of Chapter 176D, Progressive similarly argues that Martorana has failed to state a claim that its conduct amounts to an unfair or deceptive act which violates Chapter 93A.  The Court disagrees.

In the case at bar, Martorana has alleged that Progressive possesses data showing that there is essentially no difference between listed and sold prices of used vehicles and, despite this data, represents to its insureds that there are differences in these prices, resulting in a lower total ACV. D. 10 ¶¶ 1–8, 20–48.  A reasonable factfinder could find that these acts are unfair or deceptive because they, as alleged, "possess[] a tendency to deceive" that could reasonably cause a person to act differently than she otherwise would have.  PMP Assocs., Inc., 366 Mass. at 596 (citation and internal quotation marks omitted); Aspinall, 442 Mass. at 394 (citation and internal quotation marks omitted).  A reasonable factfinder could also find that Progressive failed to disclose a material fact, as discussed above.  V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 417 (1st Cir. 1985) (noting that "[w]e are not convinced . . . that [a party] needs to allege more than a failure to disclose a material fact to state a cause of action under [C]hapter 93A").

Furthermore, conduct that comes "within any recognized or established common law . . . concept of fairness" is actionable under Chapter 93A.  VMark Software v. EMC Corp., 37 Mass. App. Ct. 610, 620 (1994) (citation omitted).  Here, Martorana has also alleged a breach of the implied covenant of good faith and fair dealing (Count III, which is not challenged here by Progressive), which can constitute a violation of Chapter 93A.  See, e.g., Speakman v. Allmerica Fin. Life. Ins. & Annuity Co., 367 F. Supp. 2d 122, 140–41 (D. Mass. 2005) (stating that "courts have held that claims of violation of the implied covenant of good faith and fair dealing are not simple breach of contract claims for purposes of Chapter 93A" and that "because plaintiffs'

15

allegations support a claim for breach of the implied covenant of good faith and fair dealing, they have also sufficiently alleged 'unfair' or 'deceptive' conduct" (citations omitted)); Trent Partners & Assocs. v. Digit. Equip. Corp., 120 F. Supp. 2d 84, 107 (D. Mass. 1999) (same); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 476 (1991) (same); Tufankjian v. Rockland Trust Co., 57 Mass. App. Ct. 173, 178–79 (2003) (same).[6]  And the facts, as plausibly alleged here, could give rise to a claim for breach of the implied covenant of good faith and fair dealing, which requires that parties "deal honestly and in good faith in both the performance and enforcement of the terms of their contract."  Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (quoting Hawthorne's, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 211 (1993)) (internal quotation marks omitted).

Progressive raises several arguments to challenge the c. 93A claim on this ground. First, it argues that Martorana's claim should be dismissed because her claim rings in fraud and is thus required to meet the heightened pleading standard of Rule 9(b). D. 25 at 13–15; D. 43 at 4–5. Even if that standard applies, Martorana has satisfied it.  Rule 9(b) requires "that a complaint . . . specify the 'time, place, and content of an alleged false representation,' including misrepresentations forming the basis of a Chapter 93A claim." O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 450 (D. Mass. 2018) (quoting Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22 (1st Cir. 2017)).  Here, Martorana alleged that Progressive misrepresented to her on July 7, 2020 that there is a difference between the list and sale prices of used vehicles, resulting in

---

[6] Progressive's attempt to distinguish this caselaw, D. 43 at 9 n.2, is unavailing.  Even assuming *arguendo* that these cases alone do not sufficiently support the proposition that a breach of the covenant of good faith and fair dealing always can constitute a Chapter 93A violation, the caselaw is clear that it may do so.  See, e.g., Mass. Emps. Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995) (highlighting that "[w]e have said that a breach of the implied covenant of good faith and fair dealing may constitute an unfair or deceptive act or practice for the purposes of G. L. c. 93A"); Cherick Distribs. v. Polar Corp., 41 Mass. App. Ct. 125, 128 (1996) (same).

a lower total ACV, in its Vehicle Valuation Report.  D. 10 ¶¶ 17–23; D. 10-2 at 12.  This specifically alleges the who, what, where, and when required for the heightened pleading standard of Rule 9(b).  See Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016) (concluding the complaint provided sufficient particularity for Rule 9(b) purposes, where "CVS is the 'who'; the heart health statements are the 'what'; the label is the 'where'; and the occasion on which Kaufman purchased the product is the 'when'").  Progressive argues that no such representation is made in the Vehicle Valuation Report, D. 43 at 6, but at oral argument it appeared to concede that the report's description of the PSA represents that negotiations between dealerships and buyers result in a different price than that which is listed, and the resulting price is presumed to be lower.

Second, Progressive attempts to characterize Martorana's claims as a disagreement with the application of the PSA, D. 25 at 14; D. 43 at 7–8, thus requiring dismissal because "a good faith dispute as to whether money is owed . . . is not the stuff of which a c. 93A claim is made," McGilloway v. Safety Ins. Co., 488 Mass. 610, 619 (2021) (citation and internal quotation marks omitted).  The Court is unconvinced.  Martorana does not simply disagree with the application of the PSA; rather, she alleges that Progressive knows car dealers do not negotiate down from the list price and still represents to its insureds that they do, thus resulting in a lower total ACV.

Third, Progressive argues that a 93A claim requires plaintiffs to have suffered a loss, and Martorana "has not demonstrated any actual loss stemming from that misrepresentation or omission separate and apart from her contractual injuries."  D. 25 at 14.  Here, Martorana has alleged an injury, D. 10 ¶¶ 49–50, and the cases upon which Progressive relies do not stand for the proposition that the same facts or injury cannot undergird both a 93A claim and contractual claims. See, e.g., Hershenow v. Enter. Rent-A-Car Co. of Bos., 445 Mass. 790 (2006); Rule v. Fort Dodge

Animal Health, Inc., 604 F. Supp. 2d 288 (D. Mass. 2009); Morgan v. Mass. Homeland Ins. Co.,

No. 2012-00205, 2015 WL 13037264 (Mass. Super. Ct. July 13, 2015).

Accordingly, Progressive's motion to dismiss Martorana's 93A claim is allowed only to

the extent she relied on Mass. Gen. L. c. 176D, § 3(9)(c) and (g).  Otherwise, the motion is denied.

### B.      Declaratory Judgment (Count IV)

Progressive also seeks dismissal of Count IV of Martorana's amended complaint,

requesting a declaratory judgment.  D. 24.  Specifically, Progressive argues dismissal is warranted

because Martorana lacks standing and because the declaratory judgment would be duplicative of

her breach of contract claim.  D. 25 at 15–17; D. 43 at 9–10.  The Court need not reach the former

argument because the latter warrants dismissal.

Here, it is evident that Martorana's claim for declaratory relief is duplicative of her breach

of contract claim.  Count IV requests a declaration that:

> in paying total-loss claims by first-party insureds, it is a breach of Defendant's
> insurance contract, as well as a violation of law, for Defendant to base the valuation
> and payment of claims on values of comparable vehicles that have been reduced by
> arbitrary Projected Sold Adjustments that are (a) arbitrary, (b) contrary to industry
> practices and consumer experiences (and therefore not reflective of the vehicle's
> fair market value), and (c) not as reasonably specific or appropriate as to dollar
> amount.

D. 10 ¶ 101.  In similar fashion, Martorana's breach of contract claims alleges that Progressive

"failed to pay the ACV of [Martorana's] and Class members' vehicles because [Progressive]

applied an arbitrary and capricious [PSA] to comparable vehicles in order to reduce their market

value and, as a result, [Progressive's] total-loss payments to insureds," "failed to comply with

Massachusetts law," and "failed to pay [Martorana] and each of the other Class members the

promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each

of the other Class members."  Id. ¶¶ 86–88.  By the Court declaring that Progressive breached its

contract, as well as Massachusetts law, it logically follows that this would necessarily resolve the breach of contract claim.  The claims are, therefore, duplicative.

Martorana presses three arguments against dismissal.  First, she contends that, even assuming the claims are duplicative, that is not dispositive of the inquiry.  Martorana is correct, because under the Declaratory Judgment Act and Fed. R. Civ. P. 57, courts have broad authority to grant or deny declaratory relief, even where another remedy exists.  28 U.S.C. § 2201(a) (allowing "any court of the United States . . . [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"); Fed. R. Civ. P. 57 (highlighting that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate").  The First Circuit, however, has stated that "[p]leading an additional cause of action [which] provides . . . no further remedy . . . is . . . subject to dismissal as a duplicative claim."  Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013) (citations omitted) (dismissing claim for declaratory relief where it "merely duplicates Count I, which also asserts a cause of action for breach of [contract]").  This Court and other sessions of this Court have routinely followed suit.  See, e.g., Guilfoile v. Shields Pharm., LLC, No. 16-cv-10652-DJC, 2021 WL 4459515, at *5 (D. Mass. Sept. 29, 2021) (dismissing claim requesting declaratory judgment as duplicative of breach of contract claim); Sterry St. Auto Sales, Inc. v. Cummins Inc., No. 1:20-cv-10798-MPK, 2020 WL 6871022, at *3–4 (D. Mass. Nov. 23, 2020) (same); BASF Corp. v. Martineaus Auto Body, Inc., No. 18-cv-10881-ADB, 2019 WL 383885, at *5 (D. Mass. Jan. 30, 2019) (same); Gormally Broadcasting Licenses, LLC v. Charter Commc'n Holding Co., LLC, No. 3:16-cv-30152-MGM, 2017 WL 3131986, at *6 (D. Mass. Feb. 28, 2017) (same); Torres v. Tommie Copper, Inc., No. 15-cv-13007-GAO, 2016 WL 8902576, at *4 (D. Mass. Aug. 26, 2016) (same).

Second, Martorana asks this Court to follow other courts, who, in analyzing materially identical claims, refused to dismiss claims for declaratory relief, despite the claim's duplicative nature.  See, e.g., Chadwick v. State Farm Mut. Auto. Ins. Co., No. 4:21-cv-1161-DPM, 2022 U.S. Dist. LEXIS 117926, at *3 (E.D. Ark. July 5, 2022); Ngethpharat v. State Farm Mut. Auto. Ins. Co., 499 F. Supp. 3d 908, 919 (W.D. Wash. 2020).  Other courts analyzing materially identical claims, however, have reached the exact opposite conclusion.  See, e.g., Holmes v. Progressive Universal Ins. Co., No. 22 C 894, 2023 WL 130477, at *9 (N.D. Ill. Jan. 9, 2023); Watson v. Progressive Direct Ins. Co., No. 5: 22-203-DCR, 2022 WL 18027628, at *11–12 (E.D. Ky. Dec. 30, 2022); Williams v. Progressive Direct Ins. Co., No. 22-cv-510-MAK, 2022 WL 4482726, at *11 (D. Del. Sept. 27, 2022); Petri v. Drive N.J. Ins. Co., No. 1:21-cv-20510, 2022 WL 4483437, at *7 (D.N.J. Sept. 26, 2022); Brown, 2022 WL 18777475, at *9 n.3.  Moreover, this argument is less persuasive where the First Circuit has concluded dismissal is proper where a claim for declaratory judgment would be duplicative of a breach of contract claim.  Young, 717 F.3d at 237.

Finally, Martorana relies upon a case within this Circuit for the proposition that "it is more sensible to analyze potential overlap and duplication—and whether to exercise discretion in declining or allowing declaratory judgment to proceed—after the case develops."  D. 34 at 14 (citing Wyman v. U.S. Surgical Corp., No. 1:18-cv-00095, 2019 WL 1090763, at *4–5 (D. Me. Mar. 6, 2019)).  The Wyman court, however, concluded that the plaintiffs' request for declaratory relief would not be duplicative of their underlying continuing nuisance and tort claims, because Maine caselaw "recogniz[ed] the availability of successive actions for damages on a continuing nuisance or continuing tort claim" and declaratory judgment could be useful in bringing successive actions.  Wyman, 2019 WL 1090763, at *4–5.  No such considerations are present here.

For all of these reasons, Martorana's request for declaratory relief, Count IV, is dismissed.

**VI.     Conclusion**

For the foregoing reasons, the Court ALLOWS Progressive's partial motion to dismiss as to Count I, only to the extent Count I relies upon Mass. Gen. L. c. 176D, § 3(9)(c) and (g), and as to Count IV, the request for declaratory relief, and otherwise DENIES the motion, D. 24.

**So Ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge